The next case for oral argument this morning is Appeal No. 24-2972, United States v. Hill. Good morning, and may it please the Court. Elliot Lauthan on behalf of Deshon Hill. This appeal stems from a revocation of supervised release, where the defendant received an above-guideline statutory maximum two-year term of imprisonment, and the evidence underlying that revocation stemmed from an anonymously obtained video and photo evidence, where the source of that video and media was admittedly biased against the defendant and, quote, wanted to ruin the defendant's life. Our position on appeal is that the district court should have conducted the balancing test that Rule 32.1b2c requires, that this Court explained in Jordan and has since discussed in plenty of cases, including Mosley, Moslevic, Perez, etc. Mr. Lauthan, what was the hearsay that the district court relied upon in rendering its decision? So, Judge Kirsch, I'd point you to pages 33-34 of the transcript. And the judge, in recounting the timeline of events, says that the phone was retrieved by the caller from his stolen car. That knowledge of the stolen car only comes from the hearsay. And then later says the defendant had every opportunity to introduce into evidence the phone. It's not there, and that's because he lost it in the car in this state. He said he lost it. He told his probation officer he lost his phone. But not in the car. The stolen car— But I guess, what difference does it make—I only say, what difference does it make where the phone was found? How is that relevant? Because what I'm looking at is the judge—the probation officer testifies that he received text messages from the defendant's phone with the following pictures and videos. The judge then viewed the pictures and videos and concluded by a preponderance that the evidence of that was the defendant with a gun. That was it. Judge Kirsch, respectfully, I don't think it's that simple. Why not? Well, to start, there's the reality in these cases where the cat's out of the bag. The judge has heard the hearsay, and this hearing was dominated by hearsay. Now, the judge, to be sure, at the end says, I don't need to credit all of that, but one, it's out of the bag. Two, he has a stolen car. And three, the judge, right after the stolen car part that I just quoted, says—another quote on page 34 of the transcript— Now, I don't have to necessarily credit everything that the caller said. That implies that there is some hearsay that the judge did credit. Well, no, no. But wait, why are you assuming that the judge credited hearsay because he said that he didn't? He said it wasn't hearsay, right, and he wasn't going to rely on the hearsay. This is the direct quote that I think your question, if I'm hearing you correctly, is predicated on. He says, quote, exactly what I said. I don't have to necessarily credit everything that the caller said, including things like this guy is dealing drugs or carrying guns, plural. I don't need to rely on those other statements that the caller made to the probation officer. But that—in saying that I don't have to necessarily credit everything that the caller said, that's implying that there are some things that he is crediting. But I thought during the transcript there was some discussion of hearsay, and the judge said that he wasn't going to rely on hearsay or that it wasn't hearsay. Throughout the—what I'm quoting is during the findings at the end. During the substantive part of when the evidence is being elicited, the judge puts it on hold and says, I understand that there's a due process concern. I just need to figure out if it's reliable, and I'll do so at the end of the hearing. He never discredits the hearsay then. He sets it on ice. He recognizes that this is precarious and then makes that finding at the end. And look, at the end of the day, I think the district court just was mistaken on the law in terms of what Jordan requires. And that is, as this court said in Moselvich, that it is—that when there is a—when hearsay is elicited or—excuse me, that when hearsay is elicited, the district court must conduct the balance—must balance the interest between the parties. And then there's, of course, the harmlessness part. This is not a per se reversal. But the district court did not do that. In terms of harmlessness, the—I would point to the colloquy I just had with Judge Kirsch in terms of the judge saying that he relied on that hearsay. And secondly, the government makes the argument that, well, we didn't know the identity of the caller, so how could we have—how could we have provided that identity? That begs the question, why didn't the government go and conduct any investigation? There's so many yellow flags in terms of what this caller said to probation. How did the caller know to call probation after getting into the phone? Why was the caller—how did the caller know that—or believed that Mr. Hill was in a gang and had been dealing drugs? If the caller—if the firearm had been found in this stolen car, why didn't the probation officer or government go and look into that firearm? Why does any of that matter, though? Because the court didn't rely on that. The court looked at the pictures from the phone, which clearly depicted the defendant holding a gun. Judge Steen, respectfully, I'd push back on the second part of that, which is I don't think that the photo clearly depicts Mr. Hill. And I don't think— Assume that—assume that it does. Why does any of what you're arguing matter about the gangs? The court didn't rely on any of that. The court looked at the pictures from the phone, the fact that it was the defendant's phone that these came from. We know the defendant had the phone at the time the pictures were taken because he called his probation officer after that from that phone. So why does all—there's no indication that the court relied on gang membership or these other factors. I agree with you, Judge Steen, that the court did not rely on the gang part or the—I take the district court at its word in terms of saying I don't necessarily credit those other parts. I take that, and I would not quibble with that. I would quibble with whether the district court credited the probation officer's identification. I don't think that the district court did. And second— The district court did not from the covered face photo. The court relied on the fact that it came from the phone and other factors. Right, which then leads— The full body picture where he wasn't covered up. Which is separate. And that the district court crediting that does not account for this basic technical assumption that the media was created on the defendant's phone. That it's actually a selfie of him. If this admittedly biased source had the defendant's phone, and we can even assume that for the sake of argument that the car was stolen, that he found the phone in that car. The source could have just as easily texted the media to that phone and said, well, I have this damning video. I can go get him by sending that to his probation officer. And this is all why this adverse witness should have been subject to cross-examination. Maybe the government would have carried its case at the end of the day. But the district court needed to balance the interests of the parties, and in doing so, the defendant could have tested each of these assumptions under cross-examination. You don't dispute that the defendant had his phone on July 23, 2024, do you? I don't think that's in the record. Well, he had a call with his probation officer in early August from that phone. Yes. So we know that we know he has the phone on that date. OK. I see I'm in my rebuttal time. Sure. Thank you. Thank you. Ms. Peterson. Good morning. Good morning. May it please the court, Michelle Peterson for the United States. The procedures here at the defendant's supervised release revocation hearing complied with Rule 32.1 and with the Constitution. The sender of the video and photos from the phone, defendant's phone, did not need to be subject to cross-examination. In revoking supervised release, the court relied on the testimony of the probation officer, including the identification of the defendant's phone number and the photos and videos from the phone, the defendant's own statements that he had lost his phone in the time period that these text messages were sent, and the photos and videos themselves. The court said that he was considering the statements of the caller for the impact on the listener, the probation officer, not for the truth of the matter asserted. The court did not rely on hearsay from the caller in revoking defendant's supervised release. Can you walk us through that? I do hear your effect on the listener argument, exception. Where does the record show that the caller's statements were introduced for the effect they had on Beng Cole rather than their substance, especially if we look at what Mr. Luthen was pointing us to, where the district court is saying, I'm not crediting those other statements. I'm not crediting everything he's saying, which certainly does lead to the inference as a reviewing court that there is something the district court is crediting. And the district court does explicitly say he had the phone in the car. So the district court is drawing together the timeline of events and relying on information provided solely by the caller to do that. So show me where you're building that in the record, the caller's statements were only introduced for the effect of the listener, and the district court only took it that way. Yes, Your Honor. So when the probation officer is testifying, he starts to testify about how it is he becomes in possession of these text messages and the circumstances. And he's describing the conversation that he has with the caller. And defense objects, and I'm looking for the page number, but in that objection, he objects on hearsay grounds. And the court says, I'm looking at this for the effect on the listener. That's why I'm letting this in now. I can sort of sort this out at the end. The probation officer testifies about what the caller says, introduces the photos, introduces the videos. And we get to the end when the court is going through its reasoning. And the court says, essentially, I'm finding that I'm revoking supervised release, and here's why. There are these photos and video that come from the phone. I know that the defendant doesn't have his phone at that time because of his own statements to the probation officer. And he's talking about how the phone is no longer in the defendant's possession. And he talks about how the phone is in the possession of this unknown third party. And he refers to that as the phone being in the stolen car. But I think that's just to sort of orient the listeners and everybody as to where the phone is if it's not in the defendant's possession. And it doesn't really matter why the other person has the phone. And, in fact, I think if the text messages had come with just no phone call at all from the caller, we would be in the same place. It's from the court's perspective what's important. Well, is that a different – have you shifted an argument? Because what you're saying now, it doesn't really matter why, blah, blah, blah. That's harmless. That's harmless.  Okay? Seems like you just skipped over the part where you did acknowledge the district court put the phone in the car. The district court mentions that the phone was in the car. That was the probation officer's understanding of where the phone was. And so I don't think that that was part of why the district court revoked release. So I don't think it was relying on a hearsay when it was revoking the defendant's release because it was really relying on the phones and the videos coming from the defendant's car – sorry, from the defendant's phone. And even if – going to the harmless error point – even if the district court erred in not doing a balancing test here, that error was harmless. The caller's limited information about the caller possessing the phone instead of the defendant, which is really the only part that the court could be relying on here, was reliable. And there's good cause not to call him because his identity was unknown. The parties couldn't call him. And so even if the court had done a balancing test, it would have found that in the interest of justice, for good cause, if there was hearsay, it could be admitted. Moreover, even if I'm wrong about harmless error and if the court had done the balancing test, this court couldn't tell how that came out, the defendant would still need to cross another harmless error hurdle. And that is, would the district court have revoked even without the information from the caller at all? And the district court would have because the district court is really relying on the photos, the video, the fact that it came from the defendant's phone and the timing, knowing that the defendant's phone was in his possession at the time that the calls were made, or that the photos and videos were made, and no longer in his possession the day the probation officer receives these calls and texts. The district court did not clearly err in finding defendant violated his supervisor lease after relying on those things. And circumstantial evidence shows that the video of the masked individual, which is several seconds long, you can see his face, you can see his profile, the district court did not err in concluding that that was the defendant, based on the fact that it came from his phone, based on the timing that I just talked about, based on the probation officer's belief that it was the defendant. I know the district court said, well, that alone wouldn't be enough. But in combination, the district court did not clearly err in finding that that was the defendant and did not err in finding by preponderance of the evidence that the defendant had violated his supervisor lease. And if there's no further questions, I ask the court to affirm the defendant's revocation of supervisor lease. Thank you. Mr. Laughton, rebuttal. A few points in response. One, the Rule 32.1 balancing test here is not just triggered by hearsay. It applies whenever there is an adverse witness. You have the text of the rule, you have Supreme Court precedent, and you have Perez all supporting that legal proposition. Didn't we say in Falls that it did require hearsay? I think that there is absolutely some tension between Falls and Perez. But that said, we have the Supreme Court's unequivocal language in Morrissey. And second, I think there's part Falls and large part turns on some key distinctions with this case. For example, Falls says, quote, any concerns about the adverse witness's motivation, bias, or possible incentive to lie were exceedingly small or nonexistent. We have the opposite here. We have someone who specifically said, I want to ruin this person's life. Falls also has language about the adverse witness being an accuser. And there, Falls, which I know you know well, the adverse witness was an interviewing agent. And the accuser was the defendant himself, because it was an interview. Here, we don't have that. And so I think those are key distinctions. But to your point, Judge Saney, there is some tension. Finally, a quick word about authentication. The Constitution sets a floor. And while the federal rules of evidence don't strictly apply, we know that there is that floor. And our position is that some minimum amount of authentication is necessary. And here, we have in the transcript the district court rejecting that foundation objection on page 15. See that I'm out of time. If the court has no further questions, we'd ask the court to vacate and reverse. Thank you, Mr. Laughlin. Thank you, Ms. Peterson. The court will take the case under advisement.